UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————
№ 10-CV-824 (JFB) (WDW)
———————————

LOLETA GRIFFIN,

Plaintiff,

VERSUS

NEW YORK STATE NURSES ASSOCIATION PENSION PLAN AND BENEFITS FUND,
NANCY KALEDA, ELLIOTT KELLMAN, ANNE TAHANEY, KENNETH KRUGAR,
CHARYEA WEGEE, MARC J. LEFF, ANN PARISH, BART METZGER, JOSEPH CABRAL,
FRED EISGRUB, AND G. THOMAS FERGUSON,

Defendants.

———————————

**MEMORANDUM AND ORDER**
December 22, 2010
———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Loleta Griffin (hereinafter "Griffin" or "plaintiff") brought this action in New York State Supreme Court, Nassau County, against New York State Nurses Association Pension Plan and Benefits Fund (the "Plan") and Nancy Kaleda, Elliott Kellman, Anne Tahaney, Kenneth Krugar, Charyea Wegee, Marc J. Leff, Ann Parish, Bart Metzger, Joseph Cabral, Fred Eisgrub, and G. Thomas Ferguson, individually named trustees who serve as administrators and fiduciaries of the Plan (the "Trustees")(collectively "defendants"), alleging state law claims for breach of contract and unjust enrichment, and a violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Defendants removed the action to this Court. Plaintiff challenges the determination of her pension benefits under the Plan. Specifically, plaintiff argues that she is entitled to additional years of credited service under the Plan and that the decision to deny her additional pension benefits based upon the this credited service by the Plan's Trustees was arbitrary and capricious.

Presently before the Court are defendants' motion to dismiss the plaintiff's state law claims for breach of contract and unjust

enrichment because they are preempted by ERISA, 29 U.S.C. § 1144, and defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56 on plaintiff's ERISA claim. For the reasons set forth below, the Court grants defendants' motions in their entirety. Specifically, the plaintiff concedes, and the Court agrees, that plaintiff's state law claims for breach of contract and unjust enrichment "relate to" the Plan and, thus, plaintiff's claims are preempted by ERISA.[1] In addition, with regard to plaintiff's claim brought under ERISA, plaintiff failed to raise a genuine issue of material fact on whether the denial of additional pension benefits was arbitrary and capricious and, thus, defendants are entitled to summary judgment on this claim. In particular, after carefully reviewing the administrative record in the light most favorable to the plaintiff, the non-moving party, the Court concludes that defendant provided plaintiff with a full and fair review of her claim, that defendant acted in accordance with the Plan's plain and unambiguous terms, and that the defendant's denial of benefits was reasonable, supported by substantial evidence, and not erroneous as a matter of law. In short, the undisputed facts demonstrate that there is no basis to find that the decision was arbitrary and capricious, and no rational factfinder could conclude otherwise. Accordingly, defendant's motion is granted.

I. FACTS[2]

A. The Plan

The Plan is an employee pension benefit plan governed by ERISA. (SPD at D000031.) The Plan is a "multiemployer Taft-Hartley trust fund," and the board of trustees is comprised equally of representatives of the New York State Nurses Association and the management of participating facilities. (SPD at D000025.) The Plan provides pension benefits to nurses who work for employers that participate in, and contribute to the Plan. (SPD at D000009.)

(1) Discretionary Authority

The Plan is administered by its Trustees, who "have broad discretion to determine eligibility for benefits and interpret the language of the Plan." (SPD at D000025.)[3]

The Plan further provides that:

[t]he Trustees shall have full authority to determine eligibility requirements for benefits and to make such rules

---

[1] Plaintiff does not contest that her state law claims are preempted by ERISA and argues only that preemption does not necessitate dismissal of her ERISA claim as well. (Pl.'s Opp. at 6-7.)

[2] Unless otherwise indicated, all facts cited are undisputed. Further, all facts cited to bates-stamped documents are taken from defendants' exhibits because plaintiff's exhibits are not bates-stamped. Both exhibits are attached to the declaration of Michael Behan, Chief Executive Officer of the Plan. Exhibit A (D000001-D000095) contains a true and correct copy of the summary plan description ("SPD"), and exhibit B (D000096-D000155) contains a true and correct copy of the administrative record ("AR") concerning the denial of plaintiff's claim.

[3] The defendants are past and present trustees of the Plan. (SPD at D000025-26.)

2

and regulations consistent with the orderly administration of the Plan as they deem necessary, desirable, or appropriate. The Trustees shall have the discretionary power and authority to construe the terms and provisions of the Plan.

(SPD at D000080.)

The Plan further states:

any exercise of discretion or other action by the Trustees shall be equitable and non-discriminatory and shall be uniform in application to all Employees, Participants or beneficiaries in similar circumstances.

(SPD at D000080-81.)

### (2) Plan Definitions

#### a. Covered Employment

The Plan provides: "Covered employment is employment with an employer in a position subject to a collective bargaining agreement which specifies that the employer is required to make a [Plan] contribution on your behalf." (SPD at D000010.)

#### b. Credited Service

The Plan pays participants' pension benefits based on their years of credited service. (SPD at D000046-47.) Credited service is earned by working for an employer that participates in, and contributes to, the Plan. The Plan states: "Credited service in the Plan is earned by working for a contributing employer in a bargaining unit position classified as covered employment . . . [e]mployees of the Plan and the Fund can earn credited service while they are employed in an eligible position covered by the Plan." Two types of credited service can be earned: future service credit and past service credit. (SPD at D000010.)

#### 1. Future Service Credit

The Plan provides: "Future service credit is earned if you work for an employer in a covered position *after your employer joined the Plan* and became obligated to make contributions to the Plan on your behalf." (SPD at D000010.) (emphasis added).

#### 2. Past Service Credit

The Plan provides: "Past service credit is earned if you were working for an employer in a covered position *at the time your employer joined the Plan*, provided your employer makes plan contributions to cover your past service credit." (SPD at D000010.) (emphasis added).[4]

### (3) Breaks in Service and Loss of Credited Service

Credited service is forfeited if a Participant experiences a break in service pursuant to Article 4.04(c) of the Plan.

---

[4] The Plan further distinguishes future service credit and past service credit within the Plan's mathematical formula to calculate a participant's pension benefit. Future service credit is given a "percentage multiplier" of 1.6%, while past service credit is given a multiplier of 1%. (SPD at D000008, D000012, D000046-47.)

3

Article 4.04(c) reads:

[i]f a participant completes less than 500 Hours of Service[5] *in any Plan Year* such year shall be deemed a break year and the Participant's pre-break Credited Service shall be forfeited unless:

(A) The Participant has completed at least 10 full years of Credited Service (including at least one year of Future Service Credit) prior to the break year; or
(B) The Participant completes 500 Hours of Service in a subsequent Plan Year and the number of her consecutive break years does not equal or exceed the number of her years of Credited Service prior to the break year.

(SPD at D000041.) (emphasis added).[6]

B. Plaintiff's Employment and Pension Benefits

(1) New York Presbyterian

From February 1975 until August 1982, plaintiff was employed at New York Presbyterian Hospital. (AR at D000096, D000103, D000143.) Plaintiff's employment ended at New York Presbyterian in August 1982. New York Presbyterian was a participating employer in the Plan and, thus, plaintiff accrued 7.667 years of credited service for her covered employment.

(2) Mary Immaculate

From August 1982 until plaintiff retired in February 2009, plaintiff was employed at St. Vincent's Mary Immaculate Hospital ("Mary Immaculate"). Mary Immaculate did not become a participating provider in the Plan until February 1, 1995. Therefore, under the Plan, plaintiff worked less than 500 hours of service in each of the 12 consecutive years from 1983 through 1994. Plaintiff was subsequently credited with 12.667 years of past service credit and 14 years of future service credit based upon Mary Immaculate's participation date, for a total of 26.667 years of credited service.

C. Plaintiff's Pension Benefit Estimated Statements

By letter dated September 25, 2003, the Plan provided plaintiff with an estimated pension calculation of $3,660.02 net monthly benefit based upon 33.667 years of credited service. (AR at D000128-29.) The letter included the language "[t]his estimated calculation is based on unverified employment information we have received from your employer . . . [and] shows an estimate that will remain constant and is subject to the provisions of the Plan and final review upon retirement." (AR at D000128.) The Plan prepared another estimated statement on October 19, 2005 which included a net monthly benefit of $3,772.92 based upon the same 33.667 years of credited

---

[5] According to the Plan, an "Hour of Service shall mean each hour for which a Participant is . . . compensated by an Employer." (Article 4.04(b)(2), SPD at D000040.) An Employer is defined as "[a]ny employer which has agreed . . . and is obligated . . . to make contributions to the [Plan] in accordance with a Collective Bargaining Agreement." (Article 2.05, SPD at D000031.)

[6] The vesting requirements for the Plan have changed over the years. Prior to January 1, 1983, the vesting requirement was 10 years of credited service. (SPD at D000011.)

service. (AR at D000127.)[7] Both estimated statements included credited service for New York Presbyterian and Mary Immaculate. According to the administrative record, it was discovered in May 2007 that the Plan's computer system incorrectly credited plaintiff with her New York Presbyterian employment. (AR at D000119.) Subsequently, the Plan verbally informed the plaintiff of the error and sent plaintiff a corrected estimated statement which included only the credited service for Mary Immaculate. This estimate, provided on May 22, 2007, reflected 26.667 years of credited service for plaintiff's employment at Mary Immaculate and a net monthly benefit of $2,228.54 and zero credits for plaintiff's employment at New York Presbyterian. (AR at D000125-26.) The Plan provided another estimated statement on January 14, 2009, which also reflected the same 26.667 years of service and a net monthly benefit of $2,252.11. (AR at D000109-10.)[8]

(4) The Appeals

a. Appeal by Plaintiff

On February 5, 2009, plaintiff applied for pension benefits with a retirement date of May 1, 2009. (AR at D000103-06.) By letter dated February 28, 2009, plaintiff appealed the calculation of her past service credit.[9] In response, by letter dated March 17, 2009, the Plan denied her appeal and stated that plaintiff was accurately credited with 14 years future service credit, and 12.667 years past service credit, and provided another estimate based upon 26.667 years of credited service and a net monthly benefit of $2,225.46. (AR at D000121-24.)

b. First Appeal by Plaintiff's Counsel

By letter dated May 7, 2009, plaintiff's counsel wrote to the Plan, contending plaintiff was employed at Mary Immaculate from 1975 until 2009 and entitled to seven additional years of credited service based upon the estimated statements received from the Plan in 2003 and 2005.[10] (AR at D000115-16.) By letter dated June 16, 2009, the claim was denied. (AR at D000113-14.) Tim Antoniak, Pension Department Manager, wrote:

> Your letter states that Ms. Griffin was employed at Mary Immaculate Hospital from February 1975 until March 2009. This is incorrect. According to our records, Ms. Griffin was employed at Mary Immaculate Hospital from August 1982 until February 2009.

---

[7] A cover letter was not provided in the administrative record, only the pension benefit worksheet. (AR At D000126.)

[8] This estimate was in response to plaintiff's request for a retirement package in January 2009. (AR at D000119.)

[9] Plaintiff's February 28, 2009 letter is not provided within the administrative record, but is referenced within the Plan's March 17, 2009 response. (AR at D000121-22.)

[10] During this same time, in response to an inquiry by plaintiff, by letter dated June 2, 2009, the Plan provided another estimate that reflected 26.667 years of credited service and a net monthly benefit of $2,302.91. (AR at D000107-08.) In June 2009, plaintiff executed a Benefit Payment Authorization Form, and below her signature handwrote "I still believe calculations are inaccurate. Figures posted in 1995 have changed." (AR at D000102.) Plaintiff then began receiving pension benefits of $2,302.91 per month, based on 26.667 years of credited service. (AR at D000101.)

5

(AR at D000113.)

Addressing the claim that plaintiff was not provided with her full past service credit, the Pension Department Manager further wrote:

> Your letter also states that NYSNA breached its contract with Ms. Griffin by not providing full past service credit. That is incorrect. Ms. Griffin did receive full past service credit from August 1982 through 1994, totaling 12.667 years of past service credit. From 1995 through February 2009, Ms. Griffin also received 14.000 years of future service credit, for a total of 26.667 years of credited service under the plan.[11]

(AR at D000113.)

With regard to the 2003 and 2005 estimated statements provided to plaintiff which reflected 33.667 years of credited service, the Pension Department Manager stated that plaintiff was not entitled to receive credit for her pre-break employment at New York Presbyterian. (AR at D000113.) He explained:

> Ms. Griffin was employed at NY Presbyterian Hospital from February 1975 until August 1982, when she transferred to Mary Immaculate Hospital. Since the vesting requirement before January 1, 1983 was 10 years and Mary Immaculate Hospital did not come into the Plan until February 1, 1995, it has been determined that Ms. Griffin's service credit for the period of employment at NY Presbyterian Hospital was lost pursuant to Article 4.04(c)(A) of the Plan.

(AR at D000113.)

He further wrote that the estimated statements sent to Ms. Griffin contained the following disclaimer:

> "[T]he estimated calculation is based upon unverified employment information we have received from your employer(s), and your benefit is subject to the provisions of the Plan and final review upon retirement."

(*Id.*)

And further wrote:

> Moreover, the estimates were corrected and revised calculations were sent to Ms. Griffin in 2007 which contained the correct service credit accrual. Accordingly, your claim on behalf of Ms. Griffin to include service that she was not entitled to is denied.

(*Id.*)

(3) Second Appeal by Plaintiff's Counsel

By letter dated July 20, 2009, plaintiff's counsel wrote to the Trustees. (AR at D000099-100.) The letter was substantially

---

[11] It is undisputed that plaintiff's counsel inaccurately stated that plaintiff was employed at Mary Immaculate from 1975 until 2009. As stated *supra*, plaintiff was employed by New York Presbyterian from 1975 until 1982 at which time she started with Mary Immaculate.

6

similar to the May 7, 2009 appeal.[12] It included an additional paragraph that stated: "NYSNA Pension Plan cites Article 4.04(c)(A) of the Pension Plan as a basis for nonperformance of its contract with Ms. Griffin. Article 4.04(c)(A) is not relevant to the contract with Ms. Griffin nor is it adequate reason for nonperformance." (AR at D000099-100.) Plaintiff did not elaborate further.

By letter dated August 27, 2009, the Plan's Pension Department Manager recommended the Trustees deny plaintiff's appeal for the same reasons set forth in his June 16, 2009 letter. (AR at D000098.) The Trustees decided to deny plaintiff's appeal at their October 19, 2009 board meeting. (AR at D000096.) By letter dated October 26, 2009, the Trustees denied the appeal, explaining the forfeiture of plaintiff's pre-break credited service at New York Presbyterian. (AR at D000096-97.)

The Trustees determined that plaintiff's benefit was calculated correctly and stated:

> The appeal was denied for the reason that Article 4.04(c)(A)(B) of the Plan provides that if a participant completes less than 500 hours of service in any Plan Year, such year shall be deemed a break year and the participant's pre-break credited service shall be forfeited if the participant has completed less than 10 full years of credited service prior to the break year, or if the number of consecutive break years equals or exceeds the number of years of credited service prior to the break year. From February 1975 until August 1982, Ms. Griffin had accrued 7.667 years of credited service at NY Presbyterian Hospital. She terminated employment at NY Presbyterian Hospital in August of 1982, and began working at Mary Immaculate Hospital. However, since Mary Immaculate Hospital did not become a participating employer in the NYSNA Pension Plan until February 1, 1995, a break in service occurred. The number of consecutive break years from 1983 to 1994 was 12. Since this was greater than the 7.667 years of credited service prior to the break year and since the vesting requirement prior to January 1, 1983 was 10 years of credited service, Ms. Griffin's employment at NY Presbyterian Hospital was considered lost under the provisions of the Plan.

(AR at D000096.)

The Trustees' letter further explained:

> Your appeal letter incorrectly states that Ms. Griffin was employed at Mary Immaculate Hospital from February 1975 until she retired in March 2009. As stated above, Ms. Griffin was employed at NY Presbyterian from February 1975 until her termination in August 1982. She began working at Mary Immaculate Hospital in August 1982 and remained there through February 2009. Ms. Griffin did receive full past service for her employment at Mary Immaculate

---

[12] Plaintiff's counsel again contended that plaintiff was employed at Mary Immaculate from 1975 until 2009, without disputing the Plan's June 16, 2009 letter stating that plaintiff was employed at New York Presbyterian from 1975-1982. However, plaintiff's counsel now acknowledges the dates in the Plan's June 16, 2009 letter. (Pl.'s 56.1 Stmt. ¶ 1.)

7

Hospital. From August 1982 through December 1994, she received 12.667 years of past service credit, plus 14 years of future service credit from 1995 through February 2009 for a total of 26.667 years of credited service under the plan.

(AR at D000096.)

## II. PROCEDURAL HISTORY

On January 11, 2010, plaintiff filed the instant action against defendants in the Supreme Court of the State of New York, County of Nassau. On February 24, 2010, defendants removed the action to this Court. On March 22, 2010, plaintiff filed a motion to remand to state court. Plaintiff's motion to remand was denied on May 7, 2010. On June 9, 2010, defendants moved to dismiss the common law claims for breach of contract and unjust enrichment and moved for summary judgment on plaintiff's ERISA claim. Plaintiff filed her opposition on July 16, 2010. Defendants filed a reply on August 2, 2010. Oral argument was scheduled to be held on November 8, 2010 but plaintiff's counsel was unable to appear. By letter dated November 15, 2010, the parties jointly agreed to waive oral argument and have the Court decide the present motion on the papers submitted. Accordingly, this matter is fully submitted and the Court has considered all the submissions of the parties.

## III. STANDARD OF REVIEW

### A. Summary Judgment

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set

forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

It is appropriate for courts reviewing a challenge of denial of benefits under ERISA to do so on a motion for summary judgment, which "provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record." *Gannon v. Aetna Life Ins. Co.*, No. 05 Civ. 2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007); *see also Alfano v. Cigna Life Ins. Co. of N.Y.*, No. 07 Civ. 9661(GEL), 2009 WL 222351, at *12 (S.D.N.Y. Jan. 30, 2009); *Suarato v. Bldg. Servs. 32BJ Pension Fund*, 554 F. Supp. 2d 399, 414-15 (S.D.N.Y. 2008) (collecting cases). Upon such a motion, "the contours guiding the court's disposition . . . are necessarily shaped through the application of the substantive law of ERISA." *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 780 (S.D.N.Y. 1993). Specifically, "in a summary judgment motion, 'the arbitrary and capricious standard requires that [the court] ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits.'" *Williams v. Delta Family - Case Disability & Survivorship Plan*, No. 07 Civ. 5329 (CPS), 2009 U.S. Dist. LEXIS 814, at *19 (E.D.N.Y. Jan. 7, 2009) (alteration in original) (quoting *Davis v. Comm. Bank of N.Y.*, 275 F. Supp. 2d 418, 425 (S.D.N.Y. 2003)).

B. ERISA and Administrative Review

A denial of benefits under ERISA "'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under [an] arbitrary and capricious standard." *Krauss*, 517 F.3d at 622; *see also Celardo v. GNY Automobile Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003) ("The Supreme Court . . . has indicated that plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard."). Here, as neither party disputes, the Plan explicitly affords the Trustees such discretionary authority. Therefore, the Court will apply the arbitrary and capricious standard in reviewing whether the Trustees' determination was arbitrary and capricious.[13]

---

[13] In her opposition papers, plaintiff concedes that the "arbitrary and capricious" standard applies. (*See* Pl.'s Opp. at 7 (arguing in point heading that "defendants' refusal to credit Griffin for her years of services at New York Presbyterian Hospital was arbitrary and capricious") (capital letters omitted)). However, plaintiff then argues that she has established that there is a genuine issue of material fact regarding whether a reasonable factfinder could "disagree with the [T]rustee's decision to deny Griffin pension benefits based on her years of service at New York Presbyterian Hospital." (*Id*. at 8.) This argument misstates the standard of law. Because the Court is not reviewing the decision of the Trustees *de novo*, the

In particular, according to the Second Circuit, an administrator's decision is arbitrary and capricious "if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Krauss*, 517 F.3d at 623 (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). In particular, "[s]ubstantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance.'" *Celardo*, 318 F.3d at 146 (quoting *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)); *Durakovic v. Bldg. Serv. 32B J Pension Fund,* 609 F.3d 133 (2d Cir. 2010).

Thus, "[u]nder the arbitrary and capricious standard, the scope of judicial review is narrow." *Celardo*, 318 F.3d at 146; *see also Miller*, 72 F.3d at 1070 ("When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, a district court must review deferentially a denial of benefits. . . ."); *Lee v. Aetna Life and Casualty Ins. Co.*, No. 05 Civ. 2960, 2007 U.S. Dist. LEXIS 38205, at *12 (S.D.N.Y. May 24, 2007) ("Under the arbitrary and capricious standard of review, Aetna's decision to terminate benefits is entitled to deference. . . ."); *Butler v. N.Y. Times Co.*, No. 03 Civ. 5978, 2007 U.S. Dist. LEXIS 18400, at *8-*9 (S.D.N.Y. Mar. 7, 2007) ("Under the 'arbitrary and capricious' standard the scope of review is a narrow one. A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (quoting *Bowman Transp. Inc. v. Ark. Best Freight Sys.*, 419 U.S. 281, 285 (1974)); *Greenberg v. Unum Life Insurance Co. of America*, No. CV-03-1396, 2006 U.S. Dist. LEXIS 22423, at *26-*27 (E.D.N.Y. Mar. 27, 2006) ("Decisions of the plan administrator are accorded great deference: the court may not upset a reasonable interpretation by the administrator. . . . Accordingly, it is inappropriate in this setting for the trial judge to substitute his judgment for that of the plan administrator.") (citations and quotation marks omitted).

(1) Conflict of Interest

The United States Supreme Court recently affirmed its holding in *Metropolitan Life Insurance Company v. Glenn,* 554 U.S. 105, 128 S. Ct. 2343 (2008), that in the event the administrator is operating under a conflict of interest, there is no change in the standard of review from deferential to *de novo. Conkright v. Prommert,* ---U.S. ----,130 S. Ct. 1640, 1647 (Apr. 21, 2010); *see also Durakovic v. Bldg. Serv. 32B J Pension Fund,* 609 F.3d 133 n.2 (2d Cir. 2010) (for actions under 29 U.S.C. § 1132(a)(1)(B), the district court conducts arbitrary and capricious review of administrators' discretionary decisions); *accord Hobson v. Metro. Life,* 574 F.3d 75, 83 (2d Cir. 2009); *Bendik v. Hartford Life Ins. Co.*, No. 03 Civ. 8138(LAP), 2010 WL 2730465 at *4 (S.D.N.Y. July 12, 2010). Instead, when an administrator both evaluates and pays benefits claims, the court "must take [the conflict] into account and weigh [it] as a factor in determining whether there was an abuse of discretion, but [the conflict] does not make *de novo* review appropriate." *McCauley,* 551 F.3d at 133 (citing *Glenn,* 128 S. Ct. at 2348); *see also Hobson v. Metro. Life Ins. Co.,* 574 F.3d 75, 82-83 (2d Cir. 2009); *see*

---

plaintiff must establish a genuine issue of material fact on whether the Trustees' denial was arbitrary and capricious. As noted above, it appears that this is a simple misstatement because it is within the plaintiff's argument that the Trustees' decision was arbitrary and capricious.

10

*Durakovic,* 609 F.3d at 138-39 (holding that trusts administered by bodies composed equally of employee and employer representatives as required by the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), are conflicted within the meaning of *Glenn.*).[14] A conflict of interest is included as one of several different factors that a reviewing judge must take into account in the review of benefit denials and its weight is in proportion with the "likelihood that [the conflict] affected the benefits decision." *Durakovic*, 609 F.3d at 139-140 (quoting *Glenn,* 128 S. Ct. at 2351). The arbitrary and capricious standard applies "unless the [plaintiff] can show not only that a potential conflict of interest exists, . . . but that the conflict affected the reasonableness of the [administrator's] decision," *McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126, 131 (2d Cir. 2008) (quoting *Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1259 (2d Cir. 1996)), and "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic*, 609 F.3d at 140 (citing *Hobson,* 574 F.3d at 83). "Evidence that a conflict affected a decision may be categorical (such as 'a history of biased claims administration') or case specific (such as an administrator's deceptive or unreasonable conduct)." *Tortora v. SBC Communications, Inc.*, 2010 WL 3154566, at *7 (quoting *Durakovic*, 609 F.3d at 139); *see Glenn*, 128 S. Ct. at 2351-53; *McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126 (evidence leads to the conclusion that an administrator was affected by its conflict of interest where administrator ignored a detailed medical report without further investigation and unreasonably relied on a single report that was aligned with its financial interests; had a history of biased claims; and engaged in deceptive practices toward the applicant.) Here, the Plan is a multi-employer benefit trust fund and the board of trustees consists of fourteen members, comprised equally of representatives of the New York State Nurses Association and the management of participating facilities, as required by the Taft-Hartley Act. Therefore, there is a conflict of interest that the Court must take into account. However, the plaintiff has adduced no evidence showing that the conflict of interest affected the reasonableness of the Trustees' determination.[15] Therefore, the Court takes the conflict into account as a

---

[14] *Glenn* held that a conflict exists where the employer both funds the plan and evaluates the claim, concluding that this conflict may extend to an employer's selection of an insurance company as plan administrator. *Glenn,* 128 S. Ct. at 2348. At no time did *Glenn* hold that a board of trustees was an entity engaged in a conflict of interest. Thus, prior to *Durakovic*, it was an open question within the Second Circuit whether union funds administered by employers, including a board of trustees comprised of both union and employer representatives as required by the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), was subject to conflict of interest scrutiny under the meaning of *Glenn*. *Durakovic* held that an administrator organized pursuant to Taft-Hartley is conflicted within the meaning of *Glenn* because the evaluation of claims is "entrusted (at least in part) to representatives of the entities that ultimately pay the claims allowed." *Durakovic,* 609 F.3d at 139.

[15] Plaintiff has not suggested that defendants have a history of unreasonably denying claims or that the defendants engaged in deceptive or unreasonable conduct or any of the other deficiencies noted in *Glenn* or *Durakovic*, such as inconsistent actions or failure to analyze the relevant evidence. Here, plaintiff alleges that the defendants denied plaintiff's claim "[d]espite substantial evidence to the contrary," which consists of her different conclusions regarding the Plan's provisions. (Pl.'s Opp. at 10.)

factor, without additional weight, in the arbitrary and capricious standard.

### (2) Role of Administrative Record

"The legal standard for considering evidence outside the administrative record depends on the standard of review to be applied to the claim. For a *de novo* review of the administrator's decision, 'the district court ought not to accept additional evidence absent good cause.' *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646 (2d Cir. 2002). For a review under the 'arbitrary and capricious' standard, however, 'a district court's review . . . is limited to the administrative record.'" *Parisi v. Unumprovident Corp.*, No. 3:03CV01425, 2007 U.S. Dist. LEXIS 93472, at *23-*24 (D. Conn. December 21, 2007) (citations and quotation marks omitted); *see Miller*, 72 F.3d at 1071 ("We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."); *Fitzpatrick v. Bayer Corp.*, No. 04 Civ. 5134, 2008 U.S. Dist. LEXIS 3532, at *25-*26 (S.D.N.Y. Jan. 17, 2008) ("In assessing whether the decision of the administrator was reasonable, the court may not consider extrinsic matters but must remain within the bounds of the administrative record considered by the plan's decision-maker.") (citation and quotation marks omitted); *Leccese v. Met. Life Ins. Co.*, No. 05-CV-6345, 2007 U.S. Dist. LEXIS 27194, at *15 (W.D.N.Y. April 12, 2007) ("The Second Circuit has considered whether a district court should consider evidence that was not before the plan administrator and held that additional evidence may be considered upon *de novo* review of an issue of plan interpretation. However, since the parties agree that the standard of review in this case is arbitrary and capricious, the Court is limited to a review of the record as it existed before the plan administrator.") (citations and quotation marks omitted); *Nelson v. Unum Life Ins. Co. of Am.*, 421 F. Supp. 2d 558, 572 (E.D.N.Y. 2006), *aff'd*, 232 F. App'x 23 (2d Cir. 2007) ("Thus, in determining whether Unum's denial of benefits was arbitrary and capricious, it is proper to consider nothing more and nothing less than the administrative record."); *Gaboriault v. Int'l Business Machines Corp.*, No. 1:05CV91, 2006 U.S. Dist. LEXIS 82787, at *2-*3 (D. Vt. 2006) ("Where a plan grants the plan fiduciary such discretionary authority, the Court is required to limit its review of a denial of benefits to the administrative record. . . ."). Therefore, in analyzing whether the Trustees' decision was arbitrary and capricious, the Court has confined its review to the administrative record.[16]

### IV. DISCUSSION

In support of its motion for summary judgment, defendants argue that the undisputed evidence demonstrates that its decision to deny plaintiff additional benefits was reasonable and based on substantial evidence. For the reasons described below, the Court agrees and finds that the plaintiff failed to raise a genuine issue of material fact on whether the Trustees' denial of her additional pension benefits was arbitrary and

---

[16] Plaintiff argues that the collective bargaining agreement ("CBA") between Mary Immaculate and the Plan should be considered by the Court. (Pl's. Opp. at 9-13). As stated by the Court, review is limited to the administrative record and there is no dispute that the CBA was never presented to the Trustees for consideration. In any event, for the reasons set forth herein, the CBA would not change the Court's analysis because it fails to raise a genuine issue of material fact regarding whether the Trustees' decision was arbitrary and capricious.

capricious. In particular, it is undisputed that (1) the Plan states that "[i]f a Participant completes less than 500 Hours of Service in any Plan Year such year shall be deemed a break year" (Ex. A at D000041); (2) plaintiff worked at Mary Immaculate from 1982 to 1994 and Mary Immaculate did not participate in th Plan during that period; (3) because Mary Immaculate was not part of the Plan, plaintiff did not earn credited service in 1983 through 1994. Thus, the undisputed evidence demonstrates that there was a break in service under the Plan and plaintiff is not entitled to the pre-1983 credited service she seeks. Although plaintiff subsequently received credited service in 1995 for her 1983-1994 employment for purposes of vesting and benefit credits, that subsequent event does not resurrect the pre-1983 credited service that was forfeited because of the break in service. The above-referenced unambiguous language of the Plan states that credited service must be earned *in* a calendar year to avoid a break in service, and it is undisputed that the credited service was not earned in 1983 through 1994, but rather was credited retroactively in 1995. Moreover, the estimates of plaintiff's pension benefits have no legal significance on the issue of whether her pre-1983 credited service was forfeited due to a break in service. In short, as discussed below, viewing the administrative record in the light most favorable to plaintiff, no rational factfinder could conclude that defendants' denial of the additional benefits was arbitrary and capricious.

A. The Plain Language of the Plan

As described *supra*, the Trustees' determination letter set forth the reasons why the Trustees denied Griffin's appeal for additional benefits based upon her employment at New York Presbyterian from 1975 until 1982:

The appeal was denied for the reason that Article 4.04(c)(A)(B) of the Plan provides that if a participant completes less than 500 hours of service in any Plan Year, such year shall be deemed a break year and the participant's pre-break credited service shall be forfeited if the participant has completed less than 10 full years of credited service prior to the break year, or if the number of consecutive break years equals or exceeds the number of years of credited service prior to the break year. From February 1975 until August 1982, Ms. Griffin had accrued 7.667 years of credited service at NY Presbyterian Hospital. She terminated employment at NY Presbyterian Hospital in August of 1982, and began working at Mary Immaculate Hospital. However, since Mary Immaculate Hospital did not become a participating employer in the NYSNA Pension Plan until February 1, 1995, a break in service occurred. The number of consecutive break years from 1983 to 1994 was 12. Since this was greater than the 7.667 years of credited service prior to the break year and since the vesting requirement prior to January 1, 1983 was 10 years of credited service, Ms. Griffin's employment at NY Presbyterian Hospital was considered lost under the provisions of the Plan.

(AR at D000096.)

The Court has carefully reviewed the administrative record, construing the record most favorably to plaintiff, and concludes that no rational factfinder could find that the Trustees' determination to deny plaintiff's

13

appeal for additional benefits was arbitrary and capricious.

In particular, under Article 4.04(c) of the Plan, "[i]f a Participant completes less than 500 [h]ours of [s]ervice *in any Plan Year* such year shall be deemed a break year." (emphasis added). The section further provides that a participant's pre-break credited service shall be forfeited if "[t]he [p]articipant has completed at least 10 full years of Credited Service (including at least one year of Future Service Credit) prior to the break year; or [t]he Participant completes 500 Hours of Service in a subsequent Plan Year and the number of her consecutive break years does not equal or exceed the number of her years of Credited Service prior to the break year." (SPD at D0000041.)[17]

Here, it is undisputed that plaintiff earned 7.667 years of credited service from 1975 until 1982 during her covered employment at New York Presbyterian. (Pl.'s 56.1 Stmt. ¶¶ 1-3; Defs.' 56.1 Stmt. ¶¶ 10-11.) Although plaintiff states that her covered employment with Mary Immaculate began in 1982 (Pl.'s Opp. at 9), it is undisputed that Mary Immaculate did not become a participating employer in the Plan until February 1, 1995 and, thus, Mary Immaculate was not an "Employer" under the Plan and did not constitute covered employment until that time.[18] (Pl.'s 56.1 Stmt. ¶¶ 7, 17; Defs.' 56.1 Stmt. ¶ 13.) Therefore, there can be no dispute that plaintiff worked less than 500 hours of service in each year before Mary Immaculate joined the Plan and, thus, each year was correctly deemed a break year by the Trustees. Having determined that plaintiff experienced a break in service in 1983 through 1994, it is clear that plaintiff is not entitled to the additional pre-break credited service 7.667 years. Plaintiff incurred a break in service prior to the 10 year vesting requirement and her pre-break credited service of 7.667 years was less than her consecutive break years. Therefore, as set forth in their determination letter, the Trustees correctly determined that plaintiff satisfied either prong for forfeiture of her pre-break credited service under Article 4.04(c) of the Plan.

In short, the Court finds that the Trustees' interpretation of the plain language of the Plan to be entirely reasonable and is supported by the substantial evidence of the express Plan terms and plaintiff's employment history and the record of Mary Immaculate's participation in the Plan. *Durakovic*, 609 F.3d at 141 ("Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance.") (internal quotation marks omitted). Furthermore, the express terms of the Plan, together with the Trustees' determination letter and the defendants' multiple detailed

---

[17] According to the Plan, whether or not a participant is vested, the participant will retain credit for pre-break service if the break is an allowed break, including one taken for military, maternity or paternity leave; or an approved leave of absence due to disability, strike or lockout, layoff or furlough. (SPD at D0000022.) Here, there is no argument that plaintiff's break in service was an allowed break under the Plan.

[18] As stated *supra*, "[c]overed employment is employment with an employer in a position subject to a collective bargaining agreement which specifies that the employer is required to make a [Plan] contribution on your behalf." (SPD at D000010.)

denials and explanations, including the estimated statements with computations indicating that she received zero credits for her pre-break employment at New York Presbyterian, as well as the remainder of the administrative record, belies any argument that the Trustees' decision was arbitrary and capricious. *Cf. Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) ("We have no basis for concluding that the Trustees' decision rested on anything other than the three-sentence report. Reliance on such limited information to deny the claim was arbitrary and capricious since it was not based on a consideration of the relevant factors.") (citation and quotation marks omitted). In addition, plaintiff does not argue, and there is no indication here, that the Trustees have not uniformly applied this provision in the same manner as they did with other participants pursuant to Article 12.01 of the Plan. Accordingly, construing the administrative record most favorably to plaintiff, no rational factfinder could conclude that the Trustees' decision was arbitrary and capricious. As discussed below, the Court has considered the arguments asserted by plaintiff and finds them to be without merit.

B. Plaintiff's Past Service Credit For Mary Immaculate Has No Bearing On Plaintiff's Break-in-Service

Plaintiff argues that somehow her break in service should be retroactively cured because she eventually received past service credit for her employment at Mary Immaculate. (Pl.'s Opp. at 9-11.) However, plaintiff ignores the Plan's relevant break in service provision in her opposition[19] and, instead, asserts that Mary Immaculate and the Plan "intended that their collective bargaining agreement be applied retroactively to those participants who were employed by Mary Immaculate prior to February 1, 1995," such as Griffin. (Pl.'s Opp. at 9.) As stated *supra*, there is no evidence that the CBA was ever presented to the Trustees for consideration and, thus, the Court should not consider it in evaluating the Trustees' decision. *Miller*, 72 F.3d at 1071 ("We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."). In any

---

[19] Indeed, the only evidence presented regarding the Plan's relevant break in service provision was a conclusory statement, described *supra*, in the second appeal by plaintiff's counsel. In that letter, dated July 20, 2009, plaintiff's counsel stated "NYSNA Pension Plan cites Article 4.04(c)(A) of the Pension Plan as a basis for nonperformance of its contract with Ms. Griffin. Article 4.04(c)(A) is not relevant to the contract with Ms. Griffin nor is it adequate reason for nonperformance." (AR at D000099-100.) Plaintiff's counsel did not elaborate further within the letter. However, it is insufficient for a party opposing summary judgment to rely on conjecture and "merely to assert a conclusion without supplying supporting arguments or facts" and, thus, plaintiff may not rely on the unsupported assertion that Article 4.04(c)(A) "is not relevant." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.) (citations omitted). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)); *see BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted); *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *accord R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

15

event, the CBA is irrelevant to the determination of plaintiff's break in service and forfeiture of her pre-break credited service. Section 9.01 of the CBA provided by plaintiff shows Griffin was entitled to past service credit for her employment from 1982 until Mary Immaculate joined the Plan in 1995 and such credit was to be applied according to the Plan terms.[20] That is precisely what happened. There is no dispute that plaintiff received her past service credit of 12.667 years and is currently receiving benefits based on that credit. (Pl.'s 56.1 Stmt. ¶¶ 4-7, 13, 17-19; Defs.' 56.1 Stmt. ¶¶ 13-14, 19.) As the Trustees explained in their determination letter, in accordance with the Plan terms, "Ms. Griffin did receive full past service for her employment at Mary Immaculate Hospital. From August 1982 through December 1994, she received 12.667 years of past service credit, plus 14 years of future service credit from 1995 through February 2009 for a total of 26.667 years of credited service under the plan." (AR at D000096.) Therefore, contrary to plaintiff's argument, plaintiff's past service credit was applied precisely as intended by the CBA and the Plan, and there is no evidence that the parties intended that it should negate her break in service.

To the extent that this constitutes an argument that defendants misinterpreted or incorrectly applied the provisions of the Plan, the Court rejects this argument. According to the Second Circuit, "[a]n ERISA-regulated plan is construed in accordance with federal common law. Unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning. Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Gibbs v. Cigna Corp.*, 440 F.3d 571, 578-79 (2d Cir. 2006) (citations and quotation marks omitted). Furthermore, "absent evidence indicating the intention of the parties, any ambiguity in the language used in an ERISA plan should be construed against the interests of the party that drafted the language." *Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002). "However, it is also a 'cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and to render them consistent with each other.'" *Id.* (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)). Here, the language of the Plan is unambiguous and the Trustees interpreted and enforced it in accordance with its plain meaning. As discussed *supra*, the plain and unambiguous language of Article 4.04(c) provides that a break in service occurs *in any year* that a participant completes less than 500 hours of service. It is undisputed that Mary Immaculate did not become a participating employer in the Plan until February 1, 1995 (Pl.'s 56.1 Stmt. ¶¶ 7, 17; Defs.' 56.1 Stmt. ¶ 13.), and thus plaintiff worked less than 500 hours of service in each year from 1983 through 1994. Accordingly, the Trustees

---

[20] Section 9.01 of the CBA provides:

> Effective February 1, 1995, Employer shall commence contributions to the New York State Nurses Association Pension Plan for eligible employees at the rates actuarially established by the Trustees of the Pension Plan. Such contribution rates shall be calculated to include vesting and benefit credit for *past service* with the Employer prior to February 1, 1995, such credit to be applied by the Pension Plan *in accordance with the terms thereof.*

(Pl's 56.1 Stmt. ¶ 17.)

correctly deemed each year a break year and correctly applied Article 4.04(c) and determined that plaintiff forfeited her pre-break credited service.

In short, the Court has carefully reviewed the Plan, including the provisions above construing any ambiguity in favor of plaintiff and with the intent to give effect to the Plan as a whole, and concludes that defendants' interpretation is correct. The Court can find no language within the Plan that requires the Plan to negate or back-date a participant's break in service upon receiving past service credit. Therefore, the Court agrees with defendants that the fact that plaintiff received past service credit *in 1995,* after Mary Immaculate joined the Plan, does not change the fact that plaintiff experienced breaks in service in each of the prior 12 consecutive years. Furthermore, other than the CBA, which the Court has already addressed, nowhere in her submissions has plaintiff submitted any documentary or testimonial evidence to either the Court or the Trustees as to how her break in service can be retroactively cured and, thus, not forfeit her 7.667 years at New York Presbyterian.[21] To accept Griffin's conclusion would, at the least, necessitate wholly disregarding the Plan's break in service provision, including the phrase "in any year," or adding another "allowed break" under the Plan terms to account for participants who receive past service credit.[22] Furthermore, even if plaintiff had offered a reasonable interpretation of the Plan, the Court has found the Trustees' interpretation to be entirely reasonable and the arbitrary and capricious stand mandates that "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of the plan provisions, the [administrator's] interpretation must be allowed to control." *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92-93 2d Cir. 2000 (quoting *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995)).

Under these circumstances, the Court finds that plaintiff experienced a break in service in 1983 through 1994, during her employment with Mary Immaculate and until it joined the Plan in 1995, and the plain language of the Plan dictates that plaintiff forfeited her pre-break service credit. Therefore, the Court finds that no rational factfinder could conclude that the Trustees' decision denying plaintiff her pre-break credited service under the Plan was arbitrary nor capricious, and defendants are entitled to summary judgment on this claim.

C. The 2003 and 2005 Estimates Fail to Raise a Genuine Issue of Material Fact

Plaintiff also argues that the inaccurate 2003 and 2005 estimated statements "indicate bad faith." (Pl.'s Opp. at 11.) To the extent that this is an argument that those estimates raise a genuine issue of material fact on

---

[21] As discussed *supra*, the Court should not consider the CBA because it was not part of the administrative record. However, even *assuming arguendo* it could be considered, the Court could find no language within the CBA to support plaintiff's contentions.

[22] The Court also finds that plaintiff's conclusion would be contrary to the plain language of the Plan distinguishing between future service credit and past service credit and their corresponding weighting given in the calculation of pension benefits. In other words, plaintiff's conclusion would obviate the need for past service credit because the employer and participant would be retroactively back dated after joining the Plan.

17

whether the Trustees' denial of her additional pension benefits was arbitrary and capricious, the Court finds that the plaintiff's reliance on that assertion is unavailing. In short, the estimated statements since 2007 continually indicated that plaintiff had earned 26.667 years of credited service and that plaintiff had earned zero credits for her pre-break in service employment.[23] This is the same conclusion and calculation reached by the Trustees within their determination letter, and for the reasons set forth herein, after careful review of the administrative record, including the 2003 and 2005 estimated statements, the Court concludes that the Trustees' determination that plaintiff forfeited her pre-break credited service was reasonable and in accordance with the Plan terms.[24]

In sum, after careful review of the administrative record and viewing the evidence in the light most favorable to plaintiff, even taking the conflict of interest into account, the Court concludes that the Trustees' determination, that plaintiff experienced a break in service and forfeited her previous credited service according to the express terms of the Plan, was reasonable under the plain language of the Plan. Given the undisputed facts and the plain and unambiguous language of the Plan, no rational factfinder could conclude that the decision was arbitrary and capricious, and thus summary judgment is warranted for the defendants.

---

[23] According to the administrative record, it is undisputed that plaintiff received at least two corrected estimates since 2007 that indicated 26.667 years of credited service and zero credits for her New York Presbyterian employment. Plaintiff received a corrected estimate on May 22, 2007, which included only the 26.667 years of credited service for Mary Immaculate and a net monthly benefit of $2,228.54, and on January 14, 2009, plaintiff received another estimate stating 26.667 years of service and a net monthly benefit of $2,252.11. In addition, as discussed *supra* in footnote 9, plaintiff also received at least two more estimated statements indicating the same credited service, one in March 2009 and the other June 2009, during her application for pension benefits and her appeal.

[24] Furthermore, the Court concludes that plaintiff would be unable to support a claim of promissory estoppel as a matter of law because the estimates contained a disclaimer that was clearly printed on the estimated statement prepared for plaintiff and notified her that actual benefits were subject to verification before any payments would be authorized. *See Perreca v. Gluck*, 295 F.3d 215, 225-26 (2d Cir. 2002) (where a routine statement of projected benefits contains prominent disclaimers that the calculations therein are estimates subject to review, the statement does not constitute a "promise" in the context of a promissory estoppel ERISA claim); *see also Burns v. Marley Co. Pension Plan*, 663 F. Supp. 2d 135, 142 (E.D.N.Y. 2009) ("a benefit statement explicitly labeled as an estimate will not constitute a material misrepresentation because reliance on such a statement would not be reasonable")*; accord Hart v. Equitable Life Assurance Soc.*, No. 02 Civ. 2364(HB), 2002 WL 31682383, at *5 (S.D.N.Y. Nov. 26, 2002) (benefit statements containing explicit cautionary disclaimers did not constitute "material misrepresentations").

18

V. Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss the plaintiff's common law claims for breach of contract and unjust enrichment, and defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on plaintiff's ERISA claim. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 22, 2010
Central Islip, NY

\* \* \*

Plaintiffs are represented by Lauren P. Raysor 11 Penn Plaza, Suite 500, New York, NY 10001. Defendants are represented by Charles F. Seemann III and Kara L. Lincoln of Proskauer Rose LLP, 650 Poydras St, Suite 1800, New Orleans, LA 70130, and Neal S. Schelberg, of Proskauer Rose LLP, 1585 Broadway, New York, NY 10036, and Albert Kalter, 225 Broadway, Suite 1806, New York, NY 10007.